**Yadollah A. KASHANI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 76–1681.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1976.

Decided Jan. 6, 1977.

---

1. This court did not rule on whether collective bargaining could be required under the due process clause.

Stanley J. Horn, Chicago, Ill., for petitioner.

Lauri Steven Filppu, Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., Chicago, Ill., for respondent.

Before SWYGERT, PELL and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

The petitioner in this case contends that the Board of Immigration Appeals abused its discretion in refusing to reopen the proceedings in which a deportation order had previously been entered against him. We find that the Board did not abuse its discretion and dismiss the petition for review.

I

Yadollah A. Kashani is a native and citizen of Iran who entered the United States in January 1971 as a visitor for pleasure. He was authorized to remain in the United States until August 13, 1971, but stayed beyond that date. A deportation hearing was held before an immigration judge, who on March 7, 1972 found Kashani to be deportable but gave him until April 7, 1972 to voluntarily leave the United States. Kashani specified Iran as the country to which he wished to be deported if deportation became necessary.

Kashani then moved to reopen the hearing because, he asserted, his political activities protesting the actions of the Iranian government would expose him to danger in Iran. An immigration judge denied this

motion on the ground that Kashani's fear of persecution was purely conjectural, as he had failed to supply any supporting evidence other than his own affidavit. Kashani appealed this denial to the Board of Immigration Appeals. In the notice of appeal, he contended that he had "evidence which would substantiate facts . . . alleged in the . . . affidavit." This evidence was never produced, however, and the Board dismissed the appeal on July 28, 1972. Kashani did not seek judicial review of the Board's action.

In March 1976, Kashani again moved to reopen his deportation hearing based on a claim that he would suffer persecution if deported to Iran.[1] He stated that he has actively opposed the Iranian government both before and after his arrival in the United States. He further stated that he has been an active participant in the Iranian Students Association, an organization strongly opposed to the Shah of Iran, that he has participated in seminars and political demonstrations against the Shah, and that he has openly written letters and articles voicing his opposition to the government of Iran. He contended that he has made his opinions known to the Iranian government and that that government has recently taken extreme steps to quash opposition to its policies, such as jail sentences, torture, and executions. Finally, he stated that the Iranian government had not been informed of his actions or opinions at the time of the original hearing, and that the policies of that government with respect to dissenters have become more repressive in the intervening period. He asked that the deportation order entered against him be suspended under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h), and under the United Nations Convention Relating to the Status of Refugees, as modified by Multilateral Protocol Relating to the Status of Refugees, 19 U.S.T. 6223, T.I.A.S. No. 6577 (effective November 1, 1968).

This motion was accompanied solely by copies of a number of leaflets and pamphlets voicing opposition to the Iranian government. None of this written material mentioned Kashani's name, and there was no objective indication that he had authored any of it.

The Board denied the renewed motion, stating: "We have reviewed the new evidence offered by the respondent and conclude again that it is insufficient in our view to make out a prima facie showing that the respondent's fear of persecution in Iran is well-founded. . . ." Kashani now petitions for review of the Board's order under 8 U.S.C. § 1105a(a).

## II

■ Under the applicable regulations, a motion to reopen a deportation hearing will not be granted unless the Board is satisfied that "evidence sought to be offered is material and was not available and could not have been discovered or presented at the hearing." 8 C.F.R. § 242.22. In reviewing the Board's decision not to reopen, we are limited to determining whether it has abused its discretion. *Tupacyupanqui-Marin v. Immigration & Naturalization Service,* 447 F.2d 603, 606 (7th Cir. 1971). We cannot substitute our judgment for the Board's. *Lena v. Immigration and Naturalization Service,* 379 F.2d 536, 537 (7th Cir. 1967).

■ Kashani partly bases his claim that he should not be deported on section 243(h) of the Immigration and Nationality Act, which states:

The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.

---

1. At oral argument the attorney for the Government stated that he had been told by an attorney for the Immigration and Naturalization Service that Kashani had not been deported between 1972 and 1976 because the Government could not find him. Kashani's attorney, however, denied that his client had been hiding from the Government.

This court has upheld the Attorney General's decision to limit the exercise of his discretion in favor of an alien seeking relief under this statute to cases where the alien has demonstrated a "clear probability" that he will be persecuted if he is deported. *Lena,* 379 F.2d at 538. Other circuits have agreed. *See Cisternas-Estay v. Immigration & Naturalization Service,* 531 F.2d 155, 159 (3d Cir. 1976); *Rosa v. Immigration & Naturalization Service,* 440 F.2d 100, 102 (1st Cir. 1971); *Cheng Kai Fu v. Immigration & Naturalization Service,* 386 F.2d 750, 753 (2d Cir. 1967), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968). Under this standard, objective evidence that the alien will be persecuted is necessary. The alien's own assertions, without corroboration, will not suffice. *Rosa,* 440 F.2d at 102.

Kashani, however, also relies on the United Nations Convention Relating to the Status of Refugees, as modified by the Multilateral Protocol Relating to the Status of Refugees ("the Protocol"). Article 1 of the Protocol defines a refugee as a person who

owing to a well founded fear of being persecuted for reasons of race, religion, nationality, membership of a particular social group or political opinion, is outside the country of his nationality and is unable or, owing to such fear, is unwilling to avail himself of the protection of that country; or who, not having a nationality and being outside the country of his former habitual residence as a result of such events, is unable or, owing to such fear, is unwilling to return to it. *See* 8 C.F.R. § 223a.1.

Article 33 of the Protocol provides, in pertinent part:

No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

Kashani contends that under the Protocol, which is binding on the United States government, he does not need to show a clear probability of prosecution. Rather, he argues, the only criterion which the Government may utilize in determining whether to withhold deportation is his own state of mind. He further asserts that the Attorney General only has discretion under the Protocol to determine whether that state of mind is reasonable.

■ We cannot accept this argument. While the Protocol, unlike section 243(h) of the Immigration and Nationality Act, does not specifically grant discretion to the Government in determining whether deportation must be withheld, it only requires withholding when an alien has a "well founded fear of being persecuted." This language surely refers to more than the alien's subjective state of mind. We hold that an alien claiming a "well founded fear of persecution" must either demonstrate that he actually has been a victim of persecution or that his fear is more than a matter of his own conjecture. Our interpretation of "well founded" conforms with the understanding of the committee that drafted the definition of a refugee. *See* United Nations Economic and Social Council, *Report of the Ad Hoc Committee on Statelessness and Related Problems* 39 (February 17, 1950) (E/1618; E/AC 32/5).

This requirement can only be satisfied by objective evidence that the alien's assertions are correct. Thus, the "well founded fear" standard contained in the Protocol and the "clear probability" standard which this court has engrafted onto section 243(h) will in practice converge. Moreover, any difference in the operation of these two sources of law because section 243(h) contains an express grant of discretion while the Protocol does not has been effectively removed by the Attorney General's policy of always withholding deportation when a clear probability of persecution is shown. *See Matter of Dunar,* Interim Decision No. 2192 at 19–22 (Board of Immigration Appeals, April 17, 1973). Thus, we hold that Kashani must meet the same standard of proof under the Protocol that section 243(h) requires.

**380**

Kashani has failed to satisfy this standard. He has neither established that he actually participated in the conduct which he contends will subject him to persecution nor that the Iranian government would in fact persecute him for that conduct. He has not supplied the names of people who would testify that he was a member of anti-Iranian organizations or that he engaged in conduct opposing the Iranian government, and has not listed the dates on which the alleged conduct took place. He has not specified the names or sources of articles that he claims he wrote criticizing the Iranian government or the dates on which they were published or distributed. Finally, he gave no indication that he could produce objective evidence at a reopened hearing showing that he would in fact be persecuted in Iran because he had engaged in these activities. In short, he has come forward with no facts that would allow the Immigration Service to check the veracity of his claim by checking with such sources as the State Department or the American embassy in Iran.

We recognize that it might be difficult for Kashani to discharge his burden of demonstrating a clear probability that he would be persecuted, particularly with respect to showing that conditions in Iran are in fact as repressive as he says they are. But he must offer something beyond pamphlets opposing the Iranian government that are available to anyone before we can find that the Board abused its discretion.

The Board's conclusion that Kashani's motion to reopen should be denied is further buttressed by the fact that he failed to produce specific evidence supporting his contentions when he first moved to reopen the hearing. Kashani asserts that conditions in Iran have become more repressive and the Iranian government has become aware of his activities since his first hearing in 1972. But we cannot assume that his first attempt to invoke section 243(h) was frivolous, and his failure at that time to produce objective evidence that he had claimed to possess supports the inference that he would be unable to come forward with specific facts at a reopened hearing. In addition, his listing of Iran as the country to which he wished to be deported if his deportation became necessary, made shortly before his first motion to reopen, undermines his claim that he fears persecution there and supports the Board's conclusion that he "is attempting to engage in piecemeal litigation."

Finally, Kashani contends that the Board's policy of requiring a showing of a clear probability of persecution before deportation will be withheld places him in an unfair position because if he develops a good record in support of his case at the hearing, but nonetheless loses, he will ensure that the Iranian government will persecute him after he is deported there. The immigration regulations, however, provide for hearings to be closed to the public if necessary to protect people in Kashani's position. *See* 8 C.F.R. § 242.16(a). Thus, he could have come forward with specific evidence of his anti-Iranian activities without being caught on the horns of a "Catch 22" dilemma.

The petition for review is dismissed.