Antonio Luis PEREIRA–DIAZ, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 75–3569.

United States Court of Appeals, Ninth Circuit.

April 7, 1977.

**1150**

Gary Silbiger, Los Angeles, Cal., for petitioner.

Henry E. Petersen, Asst. Atty. Gen., Crim. Div., Dept. of Justice, Washington, D. C., William D. Keller, U. S. Atty., Stephen D. Petersen, Asst. U. S. Atty., appeared, Los Angeles, Cal., Brian H. Simpson, Immigration & Naturalization Service, San Francisco, Cal., Bernard S. Karmiol, Regional Counsel, Immigration & Naturalization Service, San Pedro, Cal., Joseph Sureck, District Director, Immigration & Naturalization Service, Los Angeles, Cal., for respondent.

Before BARNES and WRIGHT, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

Antonio Luis Pereira-Diaz petitions this court under 8 U.S.C. § 1105a for review of a final order of deportation on the grounds that, first, the administrative finding of deportability based on immigrant status is not supported by substantial evidence, second, lack of procedural due process resulted in denial of a fair hearing and, third, denial of relief under Section 243(h) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1253(h), constituted an abuse of discretion.

In accordance with the following opinion, the deportation order is affirmed and the appeal is dismissed.

I.

Petitioner, a 42-year-old native and citizen of Portugal, entered the United States in January, 1974, without obtaining an admission stamp indicating place and date of entry on his passport. See 8 C.F.R. § 235.4.

* Honorable William H. Orrick, United States District Judge, Northern District of California, sitting by designation.

Previously, on November 23, 1970, petitioner had entered the United States and was authorized to remain until February 23, 1971. On March 10, 1971, petitioner was ordered to show cause why he should not be deported for having overstayed his authority. He was released on bail but failed to return for the hearing and his bond was forfeited. It was subsequently determined that petitioner had departed to Mexico.

In March, 1974, when respondent became aware of petitioner's return to the United States, a warrant was issued and petitioner was apprehended in May, 1974. On May 23, 1974, petitioner was ordered to show cause why he should not be deported for having entered the country without inspection, in violation of Section 241(a)(2) of the INA, 8 U.S.C. § 1251(a)(2).

On July 1, 1974, Immigration Judge Hozman presided over a deportation hearing. After a considerable amount of testimony was taken, principally on the issue of avoiding inspection,[1] the hearing was recessed to allow petitioner to submit an application for discretionary withholding of deportation pursuant to Section 243(h) of the INA, 8 U.S.C. § 1253.

When Judge Hozman resumed the hearing, respondent asked petitioner a few questions and then requested a recess for the purpose of lodging a new charge. The additional charge averred that petitioner was deportable under Section 241(a)(1) of the INA, 8 U.S.C. § 1251(a)(1), as an immigrant without an appropriate entry document. This charge was based on the factual allegation that petitioner had entered the United States "for the purpose of entering into business and remaining indefinitely". RT

131. A continuance was granted to, among other things, enable petitioner to meet the new charge.

The hearing resumed on April 1, 1975, before Immigration Judge Segal, because Judge Hozman had retired effective December 31, 1974. In an oral opinion, Judge Segal concluded that petitioner had deliberately avoided inspection, and that he had entered the country for the purpose of engaging in business and remaining indefinitely. He rejected petitioner's claim that he would be persecuted if deported to Portugal, and denied his application for withholding of deportation. Deportation was ordered to Nicaragua as requested by petitioner (or, in the alternative, to Portugal); however, the judge granted petitioner voluntary departure in lieu of deportation.

The Board of Immigration Appeals subsequently dismissed petitioner's administrative appeal, concluding that petitioner was deportable under Section 241(a)(1) as an immigrant who had entered without proper entry authority and that petitioner's persecution claim under Section 243(h) was inadequately founded.[2] The instant petition for review followed.

## II.

When petitioner last entered the United States in January, 1974, he was in possession of a valid *nonimmigrant* visa. Respondent claims, however, that at that time petitioner was actually an *immigrant* and is, therefore, currently deportable under 8 U.S.C. § 1251(a)(1)[3] as an "immigrant who at the time of application for admission [was] not in possession of a valid unexpired immigrant visa". 8 U.S.C. § 1182(a)(20).[4]

---

1. The testimony on this issue revealed a dispute as to why petitioner's passport was not stamped. Petitioner claimed that the immigration inspector had erred, and respondent argued that petitioner had intentionally avoided inspection upon entry.

2. The Board of Immigration Appeals did not reach the question of deportability under Section 241(a)(2) of the INA (deliberate avoidance of inspection), and that issue is not now before this Court.

3. 8 U.S.C. § 1251(a)(1) provides:

"(a) Any alien in the United States * * shall, upon the order of the Attorney General, be deported who—
    (1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry * * *."

4. 8 U.S.C. § 1182(a)(20) provides:
"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

Under 8 U.S.C. § 1101(a)(15), "nonimmigrant" status is specifically defined, and every alien who is not classifiable as a nonimmigrant falls within the "immigrant" category. The particular issue here is whether petitioner is deportable because, at the time of entry, he did not fit within 8 U.S.C. § 1101(a)(15)(B) which defines a "nonimmigrant" as:

" * * * an alien * * * having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure."

In dismissing petitioner's administrative appeal, the Board of Immigration Appeals found that:

" * * * the respondent intended to open a business in the United States at the time of his January 1974 entry. He was therefore an immigrant and needed an immigrant visa. He is deportable as alleged by the service in the lodged charge." RT 3.

In so finding, the Board erroneously equated "intent to open a business" with failure to fit within Section 1101(a)(15)(B), when the language of that section ("visiting the United States temporarily for business or temporarily for pleasure") focuses upon the intended *duration* of the visit and not merely the proposed purpose.

■ Clearly, the *nature* of business activities may be highly probative of intended duration. However, an alien who enters the United States with the intention of remaining *temporarily* in order to establish a business and then returning to his permanent residence abroad is and should be entitled to "nonimmigrant" status. In sum, the Board of Immigration Appeals has overemphasized petitioner's "intent to open a busi-

ness" by making it determinative of the Section 1101(a)(15)(B) issue.

■ Nevertheless, the deportation order must be affirmed in this instance because "reasonable, substantial, and probative evidence on the record considered as a whole" (*Trias-Hernandez v. INS,* 528 F.2d 366, 370 (9th Cir. 1975)) supports the conclusion that petitioner was not entitled to "nonimmigrant" status under the standards of Section 1101(a)(15)(B) as *properly* applied.

At the immigration hearing, petitioner stated that in January, 1974, he entered the United States with the intention of staying for a short time to see if he could invest in a business or start one of his own. Yet, when he entered, petitioner was towing a trailer containing his personal effects. Within a month after entry, petitioner obtained trucks and other equipment necessary for business, and within two months he began operation of a building maintenance service in the United States.[5] At the hearing, petitioner was shown to be in possession of a Los Angeles Business and Tax Registration Certificate (dated March, 1974), California and Texas driver's licenses, and a social security card. Although petitioner's testimony was somewhat ambiguous on this point, it appears that, after laying the groundwork for his business during 1973, he reentered the United States in January, 1974, to put the finishing touches on this business, to open this business, and to start working. Whereas, as stated, the mere opening of a business does not by itself conclusively establish intent to remain permanently, the *circumstances surrounding* the opening of the business involved *here* rather strongly evidence a preformed intent to stay more than temporarily. Moreover, the *nature* of petitioner's busi-

* * * * * *

(20) Except as otherwise specifically provided in this chapter, *any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa,* reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel docu-

ment, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title * * *." (Emphasis added.)

5. The activities of petitioner shortly after January, 1974, are quite probative, although not necessarily conclusive, of what his intent must have been at the time of entry.

ness (a small maintenance service) and petitioner's involvement in that business indicate a continuing personal supervision of operations and employees, rather than an investment designed for monitoring from abroad.[6]

In short, "reasonable, substantial and probative evidence" supports the conclusion that petitioner, upon entry in January, 1974, was not "visiting the United States temporarily for business or temporarily for pleasure".[7] Therefore, petitioner was not entitled to "nonimmigrant" status under 8 U.S.C. § 1101(a)(15)(B), and is now currently deportable under 8 U.S.C. §§ 1251(a)(1) and 1182(a)(20).

### III.

We also reject petitioner's claims that he was denied procedural due process at the administrative level.

■ Petitioner first argues that the Immigration Judge erred in receiving into evidence two letters (one from the Department of State and one from the Immigration and Naturalization Service) regarding his Section 243(h) asylum claim without affording petitioner an opportunity to examine them or to cross-examine their authors. However, the letters were admissible. *Asghari v. INS*, 396 F.2d 391, 392 (9th Cir. 1968); *cf. Martin-Mendoza v. INS*, 499 F.2d 918, 921 (9th Cir. 1974). In addition, the Immigra-

---

**6.** The oral opinion of the Immigration Judge (which, as part of the record, is properly considered in making "substantial evidence" determinations) concludes, upon review of the facts, that "respondent was seeking to enter the United States for the purpose of entering into business *and remaining indefinitely*". RT 20, emphasis added. The fact that the judge presiding at the hearing concluded that the circumstances of petitioner's January, 1974, entry and of his subsequent business endeavors indicate a lack of "temporary" intent reinforces our own conclusion.

It should also be noted that the Immigration Judge found portions of petitioner's hearing testimony to be "evasive and contradictory" (RT 18) and other portions to be "completely incredible" (RT 20).

**7.** In order to qualify for "nonimmigrant" status under 8 U.S.C. § 1101(a)(15)(B), an alien must be "visiting the United States temporarily for pleasure" *and* must have "a residence in a foreign country which he has no intention of abandoning". Although the charge brought against petitioner addressed only his nonqualification under the "temporarily for business" prong (which nonqualification is alone sufficient to preclude his classification as a "nonimmigrant" pursuant to Section 1101(a)(15)(B)), the court notes that reasonable, substantial and probative evidence on the record considered as a whole *also* establishes that petitioner did not qualify under the "foreign residence" standard. As of January, 1974, petitioner had traveled extensively during the previous 20 years, including many trips to the United States and over 40 other countries. He had been married 4 or 5 times (petitioner's testimony is contradictory on this point) and had 8 children; his former wives and children were spread out over 3 different continents. Although petitioner's most recent divorce occurred (in Mexico) shortly *after* his January, 1974, entry into the

United States, there is absolutely no evidence that, as of January, 1974, he and his last wife were sharing a foreign residence to which he intended to return. In fact, at the hearing, petitioner was unable to say where his last wife then resided. Petitioner is a native of Portugal, where his parents were living as of January, 1974. Yet petitioner apparently asserts that his home is in Venezuela. At the time of the hearing petitioner had brothers living in Venezuela, although the record does not indicate that these brothers were living in Venezuela as of January, 1974. Only one of petitioner's ex-wives (and not, apparently, his most recent one) was living in Venezuela at that time. Petitioner's parents, who *at one time* had lived in Venezuela, had long since left and not returned. Although petitioner testified that he owned a building in and had worked in Venezuela, he referred to the period "when I *was living* in Venezuela". RT 60, emphasis added. It appears to have been quite some time since petitioner himself resided in Venezuela. The court finds no evidence in the record that petitioner had a residence in Venezuela as of January, 1974; indeed, considering petitioner's peripatetic lifestyle and the relatively tenuous nature of his connections with Venezuela, there is substantial evidence to support the conclusion that he did *not* have a residence in Venezuela to which the "no intention to abandon" language of Section 1101(a)(15)(B) could reasonably apply. In January, 1974, petitioner entered the United States tendering a Portuguese passport and, at the hearing, petitioner requested his deportation country to be Nicaragua. Thus, "reasonable, substantial and probative evidence" indicates that petitioner did *not*, at the time of his entry, have "a residence in a foreign country which he [had] no intention of abandoning".

tion Judge clearly stated that he would not consider the letters in determining whether petitioner's claim of persecution had been proven. RT 101. Thus, even if petitioner was not afforded a fair opportunity to examine the letters, any error was harmless.

■ Petitioner next contends that Judge Hozman's retirement and the resultant substitution of Judge Segal to preside over the last part of the hearing violated due process. No authority is cited for this novel proposition and we find no merit in the claim. *See* 8 C.F.R. § 242.8(b). Judge Segal clearly had sufficient opportunity to observe petitioner's demeanor for credibility purposes. Of the 82 pages of transcript, Judge Segal conducted the hearing for 31 of those pages.

■ Petitioner's final contention is that due process was violated when the Immigration Judge permitted further questioning by respondent on the issue of deportability after the proceedings had moved into consideration of discretionary relief (voluntary departure and asylum under Section 243(h)); this further questioning was followed by the filing of the additional deportability charge based on 8 U.S.C. § 1101(a)(15)(B). Again, petitioner cites no authority and we find no merit in the claim. The filing of an additional deportability charge is permitted "at anytime" during the proceedings. 8 C.F.R. § 242.16(d). Furthermore, testimony on deportability and testimony on discretionary relief are normally taken at the same hearing, and the regulations to not appear to require that the testimony or the issues be considered in any particular sequence. The further questioning here was reasonable, orderly and in no way rendered petitioner's application for discretionary relief a concession of deportability. *See* 8 C.F.R. § 242.17(d).

### IV.

Petitioner's final contention on appeal concerns Section 243(h) of the INA, 8 U.S.C. § 1253(h), which provides:

"The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason."

Both the Immigration Judge and the Board of Immigration Appeals denied petitioner's request for withholding of deportation on the ground that he had failed to show a well-founded fear that his life or freedom would be endangered in Portugal because of his political opinions or past associations.

■ An administrative denial of the type of relief authorized by Section 243(h) is reversible on appeal only if the denial was "without a rational basis and [was] arbitrary, capricious or an abuse of discretion". *Hosseinmardi v. INS,* 405 F.2d 25, 27 (9th Cir. 1968).

■ In the instant case, petitioner failed to proffer adequate factual support for his broad assertions that he would be threatened by communists were he deported to Portugal. As in *Khalil v. District Director,* 457 F.2d 1276 (9th Cir. 1972), petitioner's claim amounts to essentially undocumented statements of belief. The Immigration Judge found even these beliefs unbelievable, and the record supports this finding.

Clearly, there was no abuse of discretion in the determination that petitioner's fears of persecution were not well-founded and in the consequential denial of Section 243(h) relief.

Affirmed.