Edwin **ALMIROL**, Plaintiff,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Defendant.

Civ. No. 80–4209–SW.

United States District Court, N.D. California.

July 30, 1982.

---

Donald L. Ungar, Simmons & Ungar, San Francisco, Cal., for plaintiff.

G. William Hunter, U.S. Atty., Stephen A. Shefler, Asst. U.S. Atty., Civ. Div., San Francisco, Cal., for defendant.

## ORDER AND MEMORANDUM

SPENCER WILLIAMS, District Judge.

Plaintiff Edwin Almirol brings this action to obtain judicial review of a final decision of the Immigration and Naturalization Service Regional Commissioner denying his application for a waiver of the foreign residence requirement pursuant to § 212(e) of the Immigration and Naturalization Act, 8 U.S.C. 1182(e). This action is before the court on cross motions for summary judgment.

After careful consideration of all the facts and records submitted in this case, this court remands this action to the Immigration and Naturalization Service for reconsideration of plaintiff's application in accordance with the standard set out herein.

Plaintiff is a Filipino who first entered the United States in 1970 on an educational visitor exchange program as described in § 212(e). In March of 1977, he filed an application for a waiver of the requirement that he return to the Philippines for two years before re-entering the United States. He claimed in his application that he feared persecution if he returned to the Philippines, but no supporting documents or any statement explaining the basis of his fears were submitted at that time.

In November 1977, the INS (Immigration and Naturalization Service) interviewed plaintiff to ascertain the basis of his fears. He indicated that he had been a member of the Committee for the Restoration of Civil Liberties while in the Philippines and he subscribed to their magazine. He believed this magazine's subscription list was used to form a blacklist which might have included his name. He participated in a demonstration in front of the Philippine Consulate in San Francisco. His brother and mother both had been interrogated by agents of the Philippine government about his activities and his whereabouts. His passport had been revoked by his country for allegedly failing to honor his contract to return to teach at the University of the Philippines.

The INS found plaintiff's application legally defective because he only stated his opinion as to his fear of persecution and no supporting documents were submitted. In 1978, Dr. Almirol submitted letters from his mother and brother, a list of his colleagues now missing, newspaper articles and reports describing human rights violations in the Philippines (especially academicians) and an article in a Filipino newspaper describing intimidating remarks made by a newspaper editor in the Philippines about Dr. Almirol's participation at a conference held at UC Davis.

On March 23, 1979 the District Director denied plaintiff's application and the Regional Commissioner later affirmed the Director's decision.

*Judicial Review.*

■ The decision of the INS Commissioner should not be reversed unless there is a clear abuse of discretion, unless the decision is arbitrary and capricious, or if there is an improper understanding of the law. *Moghanian v. United States Dept. of Justice,* 577 F.2d 141, 142 (9th Cir.1978).

In the instant case, plaintiff contends that the Commissioner erred in applying an improper burden of proof in considering his waiver application. He also contends the Commissioner acted in an arbitrary manner when denying his application.

*Burden of Proof Under Section 212(e).*

Section 212(e) states that the burden upon an applicant for a waiver under this statute is to establish that he "cannot return to the country of his nationality or last residence because he *would be subject to persecution* on account of race, religion, or political opinion." (Emphasis added). Although in theory the meaning seems plain on its face, in practical application it becomes obscure.

Plaintiff contends that the pertinent language is most closely related to a requirement of "well-founded fear" of persecution. Defendant responds that the language of § 212(e) should be interpreted to require a "clear probability" of persecution. These divergent interpretations compelled this court to look to the legislative history of § 212(e).

The legislative history of the amendment to § 212(e) merely states that the provision for waiver on account of likely persecution is consistent with the authority of the Attorney General to withhold deportation under Section 243(h) of the act. 1970 U.S. Code Cong. & Admin.News, pp. 2750, 2756. Section 243(h) of the act formerly provided:

"(h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason." [1]

This referral to the legislative history of § 212(e) provided little assistance in this court's search for a viable standard of proof, and warranted an examination of the decisions of the Ninth Circuit on this issue.

The Ninth Circuit has not had the opportunity to pass upon the language of § 212(e). However, it has considered the similar language of § 243(h). The Ninth Circuit used the standard of "well-founded fear" in *Pereira-Diaz v. INS,* 551 F.2d 1149 (9th Cir.1977). A Portuguese citizen failed to show a well-founded fear "that his life or freedom would be endangered in Portugal because of his political opinions or past associations." *Id.* at 1154. Pereira-Diaz only made statements as to his alleged fears and provided no documentation. Therefore, under § 243(h), he failed to sustain his burden of proof that his fears were well-founded.

The Ninth Circuit did not discuss the elements it considered in its use of the well-founded fear standard or why it chose to use it. As this case is one of first impression in this court, the court chooses to follow the direction of the Ninth Circuit and hold that the proper burden of proof under Section 212(e) is the well-founded fear standard.

Several other courts have considered similar provisions involving the subject of persecution and applicable burdens of proof. Those similar provisions are Section 243(h) and Articles 1 and 33 of the United Nations Convention (and Protocol) Relating to the Status of Refugees (TIAS 6577, 19 U.S. Treaties (Part 5, 1968)).[2]

In *Matter of Dunar,* 14 I & N Decision 310 (April 17, 1973), the Board of Immigra-

---

1. Congress has since liberalized the standard to comply with the United Nations standard. As amended March 17, 1980, Pub.L. 96–212, Title II, § 203(e), 94 Stat. 107 (Refugee Act of 1980), Section 243(h) now reads:

   (h)(1) The Attorney General shall not deport or return any alien (other than an alien described in section 241(a)(19)) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

2. Article 1, in pertinent part, describes a refugee as a person who

   ... owing to well-founded fear of being persecuted for reasons of race, religion, nationality, membership of a particular social group or political opinion, is outside the country of his nationality and is unable or, owing to such fear, is unwilling to avail himself of the protection of that country; ....
   Article 33 of the Convention provides:
   1. No Contracting State shall expel or return ("refouler") a refugee in any manner whatsoever to the frontiers of territories where his life or freedom would be threatened on account of his race, religion, nationality, membership of a particular social group or political opinion.

tion and Naturalization examined the burden of proof under Section 243(h) and remarked that the Board and some courts had previously held that an alien "has the burden of presenting evidence showing a 'clear probability of persecution'." *Id.* at 319. Dunar claimed that Articles 1 and 33 of the Protocol and Convention effectively overruled any existing United States immigration law regarding the subject of persecution, so the "clear probability" standard had to be replaced by the more "subjective" standard of "well-founded fear" found in the Protocol and Convention. The Board rejected Dunar's argument:

> "Some sort of a showing must be made and this can ordinarily be done only by objective evidence. The claimant's own testimony as to the facts will sometimes be all that is available; but the crucial question is whether the testimony, if accepted as true, makes out a realistic likelihood that he will be persecuted." *Id.* at 319.

The Board's opinion held there was no substantial difference in the coverage of Section 243(h) and Article 33.[3] *Id.* at 320. Article 33 speaks in terms of threats to life or freedom because of any of five enumerated reasons. Therefore, although the Board chose to follow the "clear probability" standard, it made clear the fact that objective evidence is also required in the use of well-founded fear as a standard.

The case of *Kashani v. INS,* 547 F.2d 376 (7th Cir.1977), involved reasoning similar to that of *Dunar.* In *Kashani,* plaintiff relied on Articles 1 and 33 of the Protocol and Convention in his argument against deportation, in addition to Section 243(h). The court discussed the well-founded fear standard in relation to the clear probability standard. The court then reasoned that the well-founded fear requirements could only

be met by objective evidence of persecution and mere assertions would not suffice without corroboration. *Kashani, supra,* at 379.

██ According to the Seventh Circuit in *Kashani,* the well-founded fear standard requires a demonstration that one "has been a victim of persecution or that his fear is more than a matter of his own conjecture." *Id.*

Under the burden of proof required in "well-founded fear," Dr. Almirol had the option of showing persecution in fact or that he held a substantial fear based on objective evidence and something more than mere conjecture. *Kashani, supra.* The Commissioner, however, states in the record that "there is no firm evidence to establish the applicant is actually being sought by his government for punitive purposes." Moreover, the Commissioner affirms the Director's belief that plaintiff was required to show that he was the "target" of the Philippine government's persecution.

The government has failed to put forth a thorough argument in rebuttal. It merely cites cases in which the plaintiff sought to prove fear of persecution and was denied relief. In each of those cases, the courts found a lack of *any* factual support or objective evidence for the plaintiff's allegations. For example, in *Moghanian, supra,* plaintiff offered no evidence on his behalf whatsoever. He only stated that other children were rude to him when he was a child in Iran. In *Kashani,* plaintiff offered only his statements and certain pamphlets bearing no author's name.

For the reasons set forth above, the Regional Commissioner's decision is vacated and this case is remanded for reconsideration in light of the well-founded fear burden of proof and for a determination as to whether Dr. Almirol's admission is in the public interest.

IT IS SO ORDERED.

---

**3.** In addition, the Board determined that the two extra classes of "nationality" and "membership of a particular social group" included in Articles 1 and 33 were clearly reconcilable with the other three classes mentioned in both articles and in Section 243(h) ("race, religion, or political opinion"):

> "In that provision (243(h)) Congress sought generally to shield aliens from the actions of their own home governments in singling them out for punitive treatment, not because of their individual misconduct or demerits, but solely because they are members of dissident or unpopular minority groups." *Dunar, supra,* at 320.