Herminio Armando SANCHEZ,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 82–1862.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 21, 1983.

Decided May 17, 1983.

Hugo (L.J.) Fleischman, Washington, D.C., for petitioner.

Charles E. Hamilton, III, Atty., Dept. of Justice, Washington, D.C., of the Bar of the Supreme Court of the State of Virginia, pro hac vice, by special leave of the Court, for respondent.

Lauri Steven Filppu and Daniel Harris, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondent.

Before WALD and SCALIA, Circuit Judges, and FRIEDMAN,* Circuit Judge, United States Court of Appeals for the Federal Circuit.

Opinion PER CURIAM.

PER CURIAM:

Petitioner, Herminio Armando Sanchez, seeks relief from two decisions of the Board

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

of Immigration Appeals (the Board). The first dismissed his appeal from the Immigration and Naturalization Service's (the INS') refusal to reopen his deportation proceedings. The second denied reconsideration of that decision and refused to grant his application for asylum. We conclude that Sanchez did not set out sufficient facts in affidavits or other supporting evidence to warrant reopening his deportation proceedings or to establish a *prima facie* case of eligibility for asylum. *See* 8 C.F.R. §§ 3.2 and 3.8(a) (1982). Hence, the Board committed no error in turning aside his pleas.

## I. FACTS

Sanchez, a native and citizen of El Salvador, entered the United States on October 10, 1970, as a nonimmigrant visitor for pleasure with permission to remain until November 9, 1970. He was granted subsequent extensions of his visit until April 9, 1971, but remained in the United States beyond that date without the authorization of the INS.

On November 24, 1976, the INS served Sanchez with an order to show cause why he should not be deported from the United States. The order charged that Sanchez was subject to deportation under § 241(a)(2) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1251(a)(2), because he had remained in the United States "for a longer time than permitted."

A deportation hearing was held on May 25, 1977. At the hearing, Sanchez admitted the truth of the allegations in the order to show cause as well as his deportability. He requested, and was granted, voluntary departure to El Salvador on or before July 15, 1977.

Sanchez, however, did not leave the United States by July 15. Subsequently, on February 24, 1978, he filed a motion under § 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1),[1] to reopen his deportation proceedings in order to apply for suspension of deportation.[2] On May 2, 1978, an immigration judge denied the motion to reopen the proceedings based on his finding that Sanchez had failed to establish that he or any United States citizen or permanent resident child, parent, or spouse would suffer "extreme hardship" as a result of his deportation, as required by § 244(a)(1), 8 U.S.C. § 1254(a)(1).

On May 15, 1978, Sanchez appealed the denial of the motion to reopen to the Board. The Board dismissed the appeal on October 19, 1981, noting its agreement with the immigration judge's finding that Sanchez had failed to show that his deportation would result in extreme hardship to himself or qualified family members.

On November 3, 1981, Sanchez requested the Board to reconsider its dismissal of his appeal of the motion to reopen. He also filed an application for asylum under § 243(h) of the Act, 8 U.S.C. § 1253(h).[3]

---

1. Section 244(a)(1), 8 U.S.C. § 1254(a)(1), provides:

   (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in section 1251(a)(19) of this title) who applies to the Attorney General for suspension of deportation and—

   (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose de-

portation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

2. At the time of his original deportation hearing Sanchez was not eligible to apply for suspension of deportation because he did not have the seven years' uninterrupted physical presence in the United States required by § 244(a)(1).

3. Section 243(h), 8 U.S.C. § 1253(h), provides:

   (h)(1) The Attorney General shall not deport or return any alien (other than an alien described in section 1251(a)(19) of this title) to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of

Based on its findings that Sanchez had presented no new evidence to establish (1) extreme hardship as required by § 244(a)(1), or (2) that he had a well-founded fear that he would suffer persecution if returned to El Salvador as required by § 243(h), the Board denied both the motion to reconsider and the application for asylum on February 1, 1982. This petition for review followed.

## II. ANALYSIS

### A. *Application for Asylum*

Sanchez argues in his petition that he has shown *prima facie* eligibility for asylum under § 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h). The Board therefore erred, he contends, in refusing to reopen his deportation proceedings and to grant him a hearing before an immigration judge.

Section 243(h)(1) provides that "the Attorney General shall not deport or return any alien . . . to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." An alien's request under § 243(h) for asylum following completion of a deportation proceeding is deemed to be a motion to reopen the hearing. *See* 8 C.F.R. § 208.11 (1982).[4]

■ The regulations promulgated under the Act set out certain requirements that a petitioner must meet before a motion to reopen will be granted. First of all, the Board may not grant such a motion unless it is based upon new, material facts. 8 C.F.R. § 3.2 (1982).[5] In addition, allegations of such new facts must be supported by affidavits or other evidentiary material, 8 C.F.R. § 3.8(a) (1982),[6] sufficient to establish a *prima facie* case of eligibility for the relief sought.[7] *INS v. Jong Ha Wang,* 450 U.S. 139, 141, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1981) (per curiam); *Balani v. INS,* 669 F.2d 1157, 1160 (6th Cir.1982) (per curiam); *Aguilar v. INS,* 638 F.2d 717, 719

---

race, religion, nationality, membership in a particular social group, or political opinion.

(2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

(A) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(C) there are serious reasons for considering that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States; or

(D) there are reasonable grounds for regarding the alien as a danger to the security of the United States.

4. 8 C.F.R. § 208.11 provides that "[a]n alien may request that [a] . . . deportation proceeding be reopened . . . on the basis of a request for asylum."

5. 8 C.F.R. § 3.2 provides, in pertinent part: Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

6. 8 C.F.R. § 3.8(a) provides that "[m]otions to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material."

7. In addition to meeting the requirements of 8 C.F.R. §§ 3.2 and 3.8(a), a motion to reopen based on a request for asylum must reasonably explain petitioner's failure to request asylum prior to the completion of the original deportation proceedings. 8 C.F.R. § 208.11 (1982). Sanchez attempts to explain his failure to apply for asylum at his 1977 deportation hearing by stating that "the danger [of returning to El Salvador] was not as serious [then] as it is now." *Petitioner's Appendix* (App.) at 11. Because of our decision that Sanchez' request for asylum fails to meet the requirements of §§ 3.2 and 3.8(a), we do not decide whether this is a reasonable explanation of his failure to advance an asylum request in 1977.

(5th Cir.1981) (per curiam); *Malaluan v. INS,* 577 F.2d 589, 592–93 (9th Cir.1978).

■ Conclusory allegations unsupported by affidavit are insufficient under §§ 3.2 and 3.8(a) to justify reopening deportation proceedings. *INS v. Jong Ha Wang,* 450 U.S. at 143, 101 S.Ct. at 1030. *See also Chae Kim Ro v. INS,* 670 F.2d 114, 116 (9th Cir.1982) (failure to allege new facts supported by evidentiary material is itself an adequate ground for denial of a motion to reopen). An alien's own assertions, without corroboration, will not suffice to meet those requirements. *See Kashani v. INS,* 547 F.2d 376, 379 (7th Cir.1977). Generalized, undocumented fears of persecution or political upheaval are also insufficient, *Rejaie v. INS,* 691 F.2d 139, 145 (3d Cir.1982), as are general statements that evidence will be introduced at the reopened hearing, *Agustin v. INS,* 700 F.2d 564, 566 (9th Cir.1983) (per curiam).

Sanchez argues here that he met the requirements of §§ 3.2 and 3.8(a) and that his deportation proceedings should therefore have been reopened. To support his contention that he has presented a *prima facie* case of eligibility, he first of all points to the information contained in his application for asylum. In that application, he stated that he is a Christian Democrat supporting the government of President Duarte; that he faces a grave danger to his life and liberty should he be returned to El Salvador because of the opinions he has expressed about that country's politics with other Salvadorans; that his twelve-year residence in the United States increases the danger he faces in returning to El Salvador, because the guerrillas would assume he has money they could extort from him; and that the guerrillas would kill him or a member of his

family[8] if he did not accept their demands and their politics. Petitioner's Appendix (App.) at 13–14, 21. He also points out that he submitted a 1978 newspaper clipping concerning political conditions in El Salvador to the Board in support of his 1978 appeal of the INS' denial of suspension of deportation, *id.* at 44, 45, and contends that the Board should have taken notice that political conditions in El Salvador have changed significantly since his 1977 deportation hearing. Finally, he asserts that his asylum application qualifies as a § 3.8(a) affidavit because it is a sworn document.

■ Based on this record, we conclude that the Board did not err in refusing to reopen Sanchez' deportation proceedings for consideration of his asylum request.[9] Sanchez has not provided any other evidence to support his own conclusory statements that he will be persecuted upon his return to El Salvador. He has not set forth any evidence documenting to whom or in what circumstances he made statements supporting the Christian Democrats rather than the guerrillas or indicating that he has any reason to believe he will in fact be persecuted for those statements if he is deported. *See Martinez-Romero v. INS,* 692 F.2d 595, 595–96 (9th Cir.1982) (per curiam) ("[i]f we were to agree with the petitioner's contention that no person should be returned to El Salvador because of the reported anarchy present there now, it would permit the whole population, if they could enter this country some way, to stay here indefinitely. There must be some special circumstances present before relief can be granted"). He did not allege or support with evidence that he or any member of his family has ever been detained, interrogated, arrested, con-

---

8. Sanchez' wife and most of his children, brothers, and sisters reside in El Salvador. App. at 16.

9. The Supreme Court has suggested, and other courts have held, that denials of motions to reopen should be reviewed under an abuse-of-discretion standard. *See INS v. Jong Ha Wang,* 450 U.S. 139, 143 n. 5, 101 S.Ct. 1027, 1030 n. 5, 67 L.Ed.2d 123 (1981) (per curiam) (regulation 3.2 may be construed to give the Board discretion in determining in which cir-

cumstances a proceeding should be reopened; it is framed in the negative, prohibiting the Board from granting a motion to reopen unless certain prerequisites are met, and does not affirmatively require the Board to reopen in any particular circumstance); *Chae Kim Ro v. INS,* 670 F.2d 114, 116 (9th Cir.1982) ("[t]his Court reviews denials of motions to reopen under the abuse of discretion standard"); *Kashani v. INS,* 547 F.2d 376, 378 (7th Cir.1977) (same).

victed, imprisoned, or persecuted because of political opinion in El Salvador. In sum, he has failed to establish a *prima facie* case that his "life or freedom would be threatened" because of his political opinions.[10] We therefore affirm the Board's decision refusing to reopen Sanchez' deportation proceedings based on his claim for asylum.

### B. *Motion to Reopen*

Sanchez also seeks relief from the Board's decision dismissing his appeal from the INS' refusal to reopen his deportation proceedings to consider his claim for suspension under § 244(a)(1), 8 U.S.C. § 1254(a)(1). Since this too is a motion to reopen proceedings, Sanchez must again meet the requirements of 8 C.F.R. §§ 3.2 and 3.8(a) by establishing a *prima facie* case of eligibility for the relief he seeks.

■ Section 244(a)(1), 8 U.S.C. § 1254(a)(1), gives the Attorney General or his delegates discretion to suspend deportation of certain deportable aliens. To qualify for relief, the otherwise deportable alien must establish continuous physical presence in the United States for seven years, good moral character, and extreme hardship to himself or to a spouse, parent, or child who is a citizen or permanent resident of the United States. The burden is on the alien to demonstrate both statutory eligibility and equities meriting the favorable exercise of discretion. *Bueno-Carrillo v. Landon,* 682 F.2d 143, 145 (7th Cir.1982); *Villena v. INS,* 622 F.2d 1352, 1357 (9th Cir.1980) (en banc).

■ Sanchez applied for reopening of his deportation proceedings under § 244(a)(1) on February 24, 1978. On May 2, 1978, the immigration judge denied the motion, finding that Sanchez had failed to establish the extreme-hardship element required by § 244(a)(1). The Board dismissed Sanchez' appeal from the INS' denial of reopening on October 19, 1981.[11]

Sanchez asserts here that he met the requirements of §§ 3.2 and 3.8(a) and that the Board therefore abused its discretion when it refused to order the immigration judge to reopen his deportation proceedings. He asserts, first of all, that his claim for

---

**10.** Other courts have upheld the denial of motions to reopen under § 243(h) in similar circumstances. *See, e.g., Rejaie v. INS,* 691 F.2d 139, 146–47 (3d Cir.1982) (petitioner's assertions that he would be faced with induction into the military if he were returned to Iran and that, because war was repugnant to his personal beliefs, he would refuse induction and therefore suffer persecution insufficient to justify reopening of deportation proceedings); *Kashani v. INS,* 547 F.2d at 380 (petition dismissed because petitioner did not establish either that he actually participated in the conduct he contended would subject him to persecution or that the Iranian government would in fact prosecute him for that conduct, did not supply the names of people who would testify that he was a member of anti-Iranian organizations or that he engaged in conduct opposing the Iranian government, did not list the date on which the alleged conduct took place, and did not specify the names or sources of articles he claimed he wrote criticizing the Iranian government or the dates on which they were published or distributed); *Matter of Martinez-Romero,* int. dec. No. 2872 (BIA June 30, 1981), *aff'd,* Martinez-Romero v. INS, 692 F.2d 595 (9th Cir.1982) (per curiam) (petitioner's assertions that she would be persecuted if deported to El Salvador because she was a former student and students were persecuted in that country (as shown by nine newspaper articles she submitted) and because in the United States she had openly criticized the killings and oppression occurring in El Salvador did not establish her *prima facie* eligibility for relief).

**11.** Sanchez also contends that the Board failed to explain adequately its decision to dismiss, as well as its refusal to reconsider that decision. We do not agree. In the decision dismissing Sanchez' appeal from the INS' denial of his motion to reopen, the Board noted Sanchez' age, lack of specialized education, possible inability to find employment due to the unsettled political situation in El Salvador, and financial responsibility for his four children and their mother, but concurred with the immigration judge's finding that these economic considerations were insufficient to establish a *prima facie* case of extreme hardship under § 244(a)(1). App. at 38–39. In denying Sanchez' motion to reconsider, the Board stated that Sanchez had not submitted any additional evidence or affidavits to establish the required *prima facie* case of § 244(a)(1) extreme hardship or § 243(h) persecution. *Id.* at 3–4. In both decisions the Board sufficiently disclosed its reasoning process and did not "cross[] the line from the tolerably terse to the intolerably mute." *Wait Radio v. FCC,* 418 F.2d 1153, 1157 (D.C.Cir. 1969).

asylum constitutes new evidence of extreme hardship. In addition, he points to the INS' failure to oppose his motion for review of its denial of reopening as an additional factor in his favor.

■ We find no merit in Sanchez' suggestion that the Board should have considered the INS' failure to oppose his appeal to the Board as a factor in establishing *prima facie* eligibility for relief. Such lack of opposition on the part of the government provided no new, material, probative evidence that Sanchez would suffer extreme hardship if deported. It was relevant only insofar as it made it easier for Sanchez to establish eligibility under § 244(a)(1) since the government did not contest the evidence he presented. But it did nothing in and of itself to help establish that *prima facie* eligibility.

■ We also note that the Board and at least one federal circuit court of appeals have stated that political claims must be considered under § 243(h) rather than § 244(a)(1) of the Act. *See Hee Yung Ahn v. INS,* 651 F.2d 1285, 1288 (9th Cir.1981); *Matter of Kojorry,* 12 I. & N.Dec. 215, 219–20 (1967); *Matter of Liao,* 11 I. & N.Dec. 113, 116 (1965).[12] Even if we were to disregard these cases and consider Sanchez' claim of persecution relevant to a determination of extreme hardship under § 244(a)(1), however, we would still uphold the Board's dismissal of his petition for review. As we found above, Sanchez' asylum claim does not justify reopening of his deportation proceedings because his assertions that he will be persecuted if he is returned to El Salvador are conclusory and unsupported by sworn evidence as required by 8 C.F.R. § 3.8(a). Thus, the evidence Sanchez sets out in support of his asylum claim is insufficient to justify reopening either under § 243(h) or § 244(a)(1).

### C. *Motion to Reconsider*

Finally, Sanchez appeals from the Board's refusal to reconsider its dismissal of his appeal from the INS decision not to reopen his deportation proceedings under § 244(a)(1). The INS based its denial of this motion on the same grounds that it had based its earlier dismissal of his motion seeking review of the INS' refusal to reopen the proceedings—that is, that Sanchez had not submitted any additional evidence or affidavits establishing a *prima facie* case of eligibility for the relief sought.

■ None of the parties appears to realize that a motion to reopen and a motion to reconsider "are two separate and distinct motions with different requirements, although they are discussed together in the same regulations." *Chudshevid v. INS,* 641 F.2d 780, 783 (9th Cir.1981). *See also Artukovic v. INS,* 693 F.2d 894, 898 (9th Cir. 1982); 1 C. Gordon and H. Rosenfield, *Immigration Law and Procedure* § 1.10g, 1–81 to 1–82 (1982). As we explained above, 8 C.F.R. § 3.8(a) demands that a motion to reopen state the new facts to be proved at the reopened hearing and be supported by affidavits or other evidentiary material. According to the same regulation, however, a motion to reconsider must "state the reasons upon which the motion is based and shall be supported by such precedent decisions as are pertinent." There is no requirement that the latter motion allege new facts or be supported by sworn evidence. *Chudshevid v. INS,* 641 F.2d at 784; *Artukovic v. INS,* 693 F.2d at 898. Thus, the motion to reconsider appears to be generally used to "question[ ] the Board's decision for alleged errors in appraising the facts and the law." 1 Gordon and Rosenfield, *Immigration Law and Procedure* § 1.10g, at 1–81.

■ Sanchez did not allege in his motion to reconsider or on this appeal that the Board applied improper legal standards, disregarded or misread prior precedents, or failed to apply a change in the law when it dismissed his appeal from the INS' refusal to reopen his deportation proceedings. The Board's written decision dismissing that appeal appears to us properly to state the

---

**12.** *But cf.* 2 C. Gordon and H. Rosenfield, *Immigration Law and Procedure* § 7.9d at 7–164 (1982) ("Board dicta suggest that anticipated persecution cannot be considered as hardship for this purpose. These dicta are unsound, since the prospect of persecution seems to entail the highest degree of hardship").

requirements of § 244(a)(1) and properly to apply its own prior precedents and those of the courts. As a result, we cannot find that the Board misapplied the law to this case.

Nor do we think that the Board misappraised the relevant facts. The Board specifically noted in its decision dismissing Sanchez' appeal that it concurred with the finding of the immigration judge that Sanchez had failed to show that his deportation would result in extreme hardship to himself or to any qualified family member. The facts he alleged before the judge amounted only to a weak showing of economic detriment,[13] which is insufficient on its own to constitute extreme hardship under § 244(a)(1). *See, e.g., Diaz-Salazar v. INS*, 700 F.2d 1156 at 1161 (7th Cir.1983). We therefore do not think the Board erred in dismissing Sanchez' motion to reconsider.

### III. CONCLUSION

For the foregoing reasons, the decisions of the Board of Immigration Appeals are

*Affirmed.*

---

**13.** Sanchez had alleged (1) that his common-law wife and four children were dependent on him for general support and continuing education; (2) that he was unlikely to find employment in that country because of his age and lack of special skills or education; and (3) that the unsettled political and economic situation in El Salvador further reduced his chances of finding work in that country. App. at 46.