**Tariq HAMID, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 79–7000.

United States Court of Appeals,
Ninth Circuit.

Submitted July 29, 1980.

Decided June 15, 1981.

As Modified July 31, 1981.

·Donald L. Ungar, San Francisco, Cal., argued, for petitioner; Michael D. Finnegan, Simmons & Ungar, San Francisco, Cal., on brief.

Eric Fisher, Dept. of Justice, Washington, D. C., argued for respondent; Lauire Steven Filppu, Washington, D. C., on brief.

Before DUNIWAY and HUG, Circuit Judges, and CROCKER,* District Judge.

DUNIWAY, Circuit Judge:

On the basis of the Supreme Court's decision in *INS v. Wang*, 1981, —— U.S. ——,

---

\* The Honorable M. D. Crocker, Senior United States District Judge for the Eastern District of    California, sitting by designation.

101 S.Ct. 1027, 67 L.Ed.2d 123, we grant the petition for rehearing, vacate our Memorandum decision of August 8, 1980, 9 Cir., 626 F.2d 866, and affirm the Board's denial of Hamid's motion to reconsider.

## I. *Background.*

Tariq Hamid, a citizen of Pakistan, was ordered deported in 1974. He appealed this order unsuccessfully, first to the Board of Immigration Appeals and then to this court. *Hamid v. INS,* 9 Cir., 1976, 538 F.2d 1389. Thereafter, he moved the Board to reopen proceedings to permit him to apply for suspension of deportation under section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254(a). The Board denied this motion and we affirmed in an unpublished Memorandum. *Hamid v. INS,* 9 Cir., 1978, 577 F.2d 751.

In June, 1978, Hamid moved the Board to reconsider its denial of his motion to reopen proceedings. The Board denied this motion in a decision dated August 23, 1978, and Hamid petitioned this court for review. In an unpublished Memorandum of August 8, 1980, we vacated the decision of the Board and remanded the matter for further proceedings consistent with the en banc decisions of this court in *Wang v. INS,* 9 Cir., 1980, 622 F.2d 1341, and *Villena v. INS,* 9 Cir., 1980, 622 F.2d 1352. By an order of September 26, 1980, however, issuance of our mandate was stayed "until final action by the Supreme Court and sixty days thereafter." Following decision by the Supreme Court in *Wang,* we asked the parties to file supplemental briefs on the question of whether the *Wang* decision now requires us to vacate our previous decision and affirm the Board.

Section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254(a), provides in relevant part that "[t]he Attorney General may, in his discretion, suspend deportation and adjust the status" of a deportable alien who has been in the United States for seven years, is of good moral character, and "who is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child who is a citizen of the United States. . . ." An alien such as Hamid, who has been ordered deported, may invoke this discretionary authority by means of a motion to reopen. "Such motions will not be granted 'when a prima facie case of eligibility for the relief sought has not been established.'" *INS v. Wang, supra,* —— U.S. ——, ——, 101 S.Ct. 1027, 1029 (citations omitted.)

The alien bears the burden of making a prima facie case, and the decision whether or not to grant a motion to reopen is within the discretion of the Board. Our review of the exercise of this discretion is narrow. *INS v. Wang, supra,* —— U.S. ——, ——, 101 S.Ct. 1027, 1030 & n.5.         ..—,

## II. *Merits.*

The Board held that Hamid's motion to reconsider its earlier denial of Hamid's motion to reopen again failed to make a prima facie showing of extreme hardship. The Board found inherently unbelievable an affidavit by Hamid's wife stating that she had no idea that Hamid would be deported when she married him. The Board held that "[t]his contention was considered in our October 1976 decision wherein we stated that 'it seems difficult to imagine that the citizen spouse . . . did at no time weigh not only the possibility but probability that it might someday be necessary for her to accompany her husband to his native country.'" The record indicates that Hamid and his wife were married seven days before the expiration of his visa.

The Board also considered a letter from a pediatrician stating, with respect to Hamid's infant son, that [b]ecause Pakistan is one of the last bastions in the world for colera (sic), smallpox and multiple parasitic and tropical disease, and is noted for its poor level of sanitation and preventitive (sic) medical care, it is my considered opinion because of this child's poor host resistance and multiple allergic history that such a move would be a marked risk to both his health and possibly his life—at least for the next 4–5 years." The Board, however, was "unconvinced that medical facilities in Pakistan are so inadequate that . . . 'the Ham-

ids face the threat of death to their only son if they go to Pakistan.' . . . [T]he respondent has failed to demonstrate that adequate medical attention, if needed, would not be available to his son in Pakistan."

Hamid argues that the Supreme Court's decision in *Wang* is not controlling because the Board's action here was not based on an interpretation of the meaning of "extreme hardship" but on an assessment of the truth and sufficiency of the affidavits supporting his motion. He argues that the Board did not find that the defeat of his wife's expectations, or his son's health, if accurately characterized, would not amount to "extreme hardship" but rather that the affidavits did not correctly state the facts. He argues that while *Wang* makes clear that the interpretation of "extreme hardship" is committed to the discretion of the Attorney General and his delegates, and should be given great deference by this court, the same standard of deference is not applicable when the Board makes its decision on the basis of the factual allegations stated in the motion to reopen or reconsider. On the basis of this distinction, Hamid argues that the Board's decision should be overturned as illogical and arbitrary. We disagree.

Hamid is correct that the Board's decision is based in part upon an assessment of the truth and sufficiency of the affidavits supporting his motion. He is also correct in pointing out the special emphasis the *Wang* Court placed on the Board's "authority to construe 'extreme hardship.' "

However, despite its emphasis on the Board's discretion to interpret the meaning of "extreme hardship," the Court in *Wang* also found that the Board had discretion to assess the truth and sufficiency of the asserted facts without reopening proceedings for a hearing. The Court stated that the purpose of requiring that motions to reopen be supported by affidavits is "to permit the Board to select for hearing only those motions *reliably* indicating the specific recent events that would render deportation a matter of extreme hardship . . ." (emphasis added). Noting that in *Wang* the court of appeals had found that a hearing was nec-

essary to evaluate the risk of harm to the minor children in that case, the Court nevertheless held that "the Board was acting within its authority" in disbelieving the factual claim "that the two 'young children of affluent, educated parents' would be subject to such educational deprivations in Korea as to amount to extreme hardship." *INS v. Wang, supra,* —— U.S. at ——, 101 S.Ct. at 1031. In short, if an extra measure of deference is due to the Board when interpreting the term "extreme hardship," our review of the Board's decision not to reopen proceedings so as to provide a hearing must be narrow even when the Board bases its action on its view of the facts.

We find no abuse of discretion in the Board's assessment of the facts alleged in the papers submitted by Hamid. The Board's conclusion that the affidavit by Hamid's wife was inherently unbelievable finds support in both the record and common sense. The Board's conclusion that the pediatrician's letter did not establish the inadequacy of Pakistan's medical facilities is supported by the letter itself. The letter merely stated, without further support, that preventative care is poor. Furthermore, it was not illogical of the Board to answer Hamid's concern as to his son's susceptibility to life threatening disease by pointing to the possibility of medical treatment in Pakistan should the son become ill. If such facilities exist, some measure of preventative care is possible while the risk that any disease will progress to the point of danger can be limited.

Our decision in *Perez v. Immigration & Naturalization Service*, 9 Cir., 1981, 643 F.2d 640, is not to the contrary. There, there was no record of the Board of Immigration Appeals' proceedings, and we remanded for further consideration. Neither is our decision in *Santana-Figueroa v. Immigration & Naturalization Service*, 9 Cir., 1981, 644 F.2d 1354, to the contrary. We think that the situation of the petitioner in that case is quite different from that of Hamid in this case.

The petition for rehearing is granted. We vacate our earlier decision in this matter and affirm the Board.

Affirmed.