**Victor Hugo BROWN, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 84–1528.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 9, 1985.
Decided Oct. 25, 1985.

Nigel L. Scott, Washington, D.C., with whom Raymond B. Thompson, Washington, D.C., was on brief, for petitioner.

Eileen A. Carty, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., was on brief, for the respondent.

Lauri Steven Filppu and Mark C. Walters, Attys., Dept. of Justice, Washington, D.C., also entered appearances, for respondent.

Before WALD, EDWARDS and STARR, Circuit Judges.

STARR, Circuit Judge.

The principal issue raised by this petition for review is whether the Board of Immigration Appeals (BIA or Board) abused its discretion by refusing to reopen the deportation proceedings of petitioner, Victor Hugo Brown. We conclude that petitioner did not support his allegation of "exceptional and extremely unusual hardship" with sufficient evidentiary material to warrant reopening his deportation proceedings. Accordingly, we deny the petition for review.

## I

Mr. Brown, a citizen of Trinidad and Tobago, entered the United States in May 1969 as a temporary visitor for pleasure. His nonimmigrant status was subsequently changed to that of student, with permission to remain in the United States until May 30, 1975. Mr. Brown has remained illegally in this country since that date, over a decade ago.

During his student days, Mr. Brown ran afoul of the law; specifically in January 1974, a New Jersey Superior Court entered a judgment of conviction against petitioner for unlawful possession of marihuana and hashish. Two years later, in 1976, the INS issued an Order to Show Cause charging that Mr. Brown was subject to deportation under Section 241(a)(11) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1251(a)(11) (1982). That provision authorizes the deportation of an alien "who at any time has been convicted of a violation of ... any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana." *Id.*

A deportation hearing was held before an immigration judge in February 1976. Proceeding *pro se*, Mr. Brown admitted that he was subject to deportation; accordingly, the immigration judge found Mr. Brown deportable as charged. Thereafter retaining counsel, Mr. Brown appealed the deportation order on the grounds that he had been denied the right to counsel at the prior hearing and that his state conviction

for drug possession did not establish his deportability under federal law. The BIA rejected as meritless the substantive challenge to his deportability but remanded the case for a new hearing at which petitioner could be represented by counsel.

The second deportation hearing was held in August 1979. Although represented by counsel, Mr. Brown again conceded deportability; he was thus found once again deportable as charged. After considerable delay, which is unexplained in the record,[1] the Board in March 1984 finally granted the INS's long pending motion for summary dismissal of Mr. Brown's appeal from the finding of deportability.[2] Subsequently, the INS ordered petitioner to surrender for deportation on or before June 14, 1984.

Two days before the date set for deportation, Mr. Brown moved before the BIA to reopen his deportation proceedings on the ground that he was eligible for suspension of deportation under § 244(a)(2) of the Act, 8 U.S.C. § 1254(a)(2) (1982).[3] Responding

1. Mr. Brown contends that the BIA may be equitably estopped from affirming the immigration judge's 1979 Order because it failed to act upon it for five years. In the first place, petitioner's eleventh hour claim of equitable estoppel was at no time advanced before the BIA by Mr. Brown; thus there is no record whatever before us on which we could properly evaluate his contention. *See Patsis v. INS,* 337 F.2d 733, 738 (8th Cir.1964), *cert. denied,* 380 U.S. 952, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965). In any event, petitioner's failure to adduce any evidence of affirmative misconduct, as opposed to the sheer fact of administrative delay, or any evidence of harm to himself occasioned by the delay precludes his maintenance of an estoppel claim. *See INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982). *See generally Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). *But cf. Payne v. Block,* 751 F.2d 1191 (11th Cir.1985) (holding that subsequent decision of Supreme Court in *Heckler* did not require reversal of its prior holding that federal agency was precluded from enforcing valid regulation because of agency's failure to comply with instruction published by agency in Federal Register), *cert. granted,* — U.S. —, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985).

2. On this appeal, Mr. Brown has again advanced the same argument challenging his deportability. He contends that he may have been convicted of unknowing and unintentional, construc-

tive possession of marihuana and hashish. As the Board has observed on two previous occasions, however, the state statute under which petitioner was convicted requires, regardless of whether possession is actual or constructive, that there be knowing or intentional possession of the controlled substances. *See* N.J. Stat.Ann. § 24: 21–20a (West 1985); *see also State v. Labato,* 7 N.J. 137, 148, 80 A.2d 617, 622–623 (N.J.1951) (interpreting term "possession" in criminal statute to require knowing and intentional control of object possessed). More fundamentally, the validity of state convictions are not properly subject to collateral attack in deportation proceedings. *See, e.g., Zinnanti v. INS,* 651 F.2d 420 (5th Cir.1981); *Ocon-Perez v. INS,* 550 F.2d 1153 (9th Cir.1977). Any *federal* mechanism for such an attack must lie, if at all, in federal habeas corpus. 28 U.S.C. § 2254 (1982). As if more were needed, Mr. Brown voluntarily foreclosed consideration of any claim related to deportability by conceding deportability at his deportation hearing while represented by counsel. *See* 8 C.F.R. § 3.1(d)(1–a)(ii).

3. Section 244(a)(2), U.S.C. § 1254(a)(2) provides:

   (a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for perma-

with remarkable dispatch in light of its prior history of unrelieved torpor, the BIA promptly denied the motion in August 1984 without a hearing. In a brief opinion, the Board concluded that Mr. Brown's motion to reopen was deficient for failure to provide evidentiary support for two necessary elements of his claim for relief under the statute: (1) continuous physical presence in the United States for ten years since his conviction, and (2) "exceptional and extremely unusual hardship" to himself or to his United States citizen wife or child as a result of his deportation. The BIA also determined that any hardship demonstrated by the evidence was insufficient to establish a *prima facie* case of "exceptional and extremely unusual hardship." This petition followed.

## II

In his petition, Mr. Brown argues that he has shown *prima facie* eligibility for suspension of deportation under § 244(a)(2) of the Act, 8 U.S.C. § 1254(a)(2). Specifically, Mr. Brown contends that he established *a prima facie* case of continuous presence by two means: an assertion in his motion to reopen that he had not been to Trinidad for ten years and a statement in his application for suspension of deportation (which was appended to his motion to reopen) that he had been continuously present in the United States since 1969. The petitioner further argues that a *prima facie* case of the necessary hardship was demonstrated by means of evidence reflecting his family's current lifestyle—including accumulated property and his citizen daughter's attainment of the age of seven—and the assertion in his motion that his wife would not settle in Trinidad if Mr. Brown were deported. The Board therefore abused its

discretion, he contends, in refusing to reopen his deportation proceedings.

To evaluate petitioner's contention, we turn first to the applicable statute. Section 244(a) of the Act, 8 U.S.C. § 1254(a), confers upon the Attorney General the "discretion" to suspend deportation and adjust the status of certain deportable aliens. Provisions (1) and (2) of § 244(a) set forth different standards governing eligibility for suspension, depending upon the legal ground for deportation. Individuals who are found deportable by virtue of violating laws prohibiting the possession of narcotic drugs or marihuana are subject to the more restrictive standard of § 244(a)(2). *See supra* n. 3. To qualify for relief under this more exacting provision, an otherwise deportable alien must establish (1) continuous physical presence in the United States for ten years following the illegal act that made him or her deportable, (2) good moral character, (3) and exceptional and extremely unusual hardship to himself (or herself) or to a spouse, parent or child who is a citizen or permanent resident of the United States. The Attorney General's authority under § 244 has been delegated to specified authorities in the INS. *See* 8 U.S.C. § 1103 (1982); 8 C.F.R. §§ 2.1, 3.2, 242.8 (1985).

■ Although the Act does not expressly authorize the reopening of deportation proceedings after deportation has been duly ordered, the INS has seen fit to promulgate regulations under the Act permitting motions to reopen. 8 C.F.R. §§ 3.2, 3.8. But the INS did not through these regulations confer upon each alien who is under an order of deportation the automatic right to delay deportation pending a hearing before the Board. *See INS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985); *INS v. Wang,* 450 U.S. 139, 143 & n. 5, 101 S.Ct. 1027, 1030 n.

nent residence, in the case of an alien . . . who applies to the Attorney General for suspension of deportation and—

(2) is deportable under [8 U.S.C. § 1251(a)(11)]; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for

deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for residence.

5, 67 L.Ed.2d 123 (1981). In particular, the regulations explicitly require that motions to reopen "state the new facts to be proved at the reopened hearing" and "be supported by affidavits or other evidentiary matter." 8 C.F.R. § 3.8(a).[4] These express evidentiary requirements were "obviously designed to permit the Board to select for hearing only those motions reliably indicating" the specific facts that would render the movant eligible for relief from deportation. *Wang, supra,* 450 U.S. at 143, 101 S.Ct. at 1030. Furthermore, such motions are not to be granted " 'when a *prima facie* case of eligibility for the relief sought has not been established.' " *Id.* at 141, 101 S.Ct. at 1029 (quoting *Matter of Lam,* 14 I. & N.Dec. 98 (BIA 1972)). If an alien does present a *prima facie* case for relief, the Board may still exercise its discretion to deny a motion to reopen. *Rios-Pineda, supra,* 105 S.Ct. at 2102. And the BIA possesses authority to deny relief on discretionary grounds without considering whether the requirements of statutory eligibility are met. *Id.*

■ The BIA's first reason for denying Brown's motion to reopen was its finding that the motion was deficient under § 3.8(a) because it was *"not supported by any evidentiary material* bearing on the continuous physical presence element of suspension eligibility." Record at 3 (emphasis added). The record reveals, quite to the contrary, that Mr. Brown appended to his motion numerous documents bearing on his continuous presence in the United States since 1974. He submitted school certificates, tax returns, an employer affidavit and a work history probative of his presence in this country during each of the last ten years. Record at 20, 46–48, 56, 59–91. In addition, petitioner also appended to his motion an application for suspension of deportation in which he averred that he had "been physically present in the United States without any absence since May 1969." Record at 19.[5] This set of documentation, in our view, is clearly sufficient to satisfy the 3.8(a) requirement of "affidavits or other evidentiary material." The Board's finding to the contrary in this specific request could therefore not be sustained as an exercise of discretion.[6] *Cf.*

---

**4.** 8 C.F.R. § 3.2 provides, in pertinent part, further limitations on the granting of motions to reopen:

> Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefore was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

At the time of his 1979 deportation hearing, Mr. Brown was not eligible to apply for suspension of deportation because he did not have the ten years' uninterrupted physical presence in the United States dating from his 1974 conviction required by § 244(a)(2).

**5.** Petitioner's assertion concerns facts within his personal knowledge; his representations indisputably partake of a serious nature inasmuch as a knowing false statement in such an application subjects the applicant to virtually the same

punishment as a knowing false statement made through an affidavit. *Compare* 18 U.S.C. § 1546 (1982) *with* 18 U.S.C. § 1001 (1982). The INS argues before us that the statement in this application does not constitute evidence because it was "an unsigned and uncorroborated conclusory allegation." Brief for Respondent at 14. Petitioner, however, would be subject to criminal punishment for knowingly presenting the application with a false statement regardless of whether he signed it. *See* 18 U.S.C. § 1546. In addition, Mr. Brown's failure to sign the application cannot be interpreted as an unwillingness to affirm its truthfulness: the INS application form expressly instructs that the "APPLICATION NOT ... BE SIGNED ... UNTIL [the] APPLICANT APPEARS BEFORE AN IMMIGRATION JUDGE." Record at 22. Finally, in view of the rather elementary fact that Mr. Brown was fully competent to testify about his own whereabouts, his statement clearly has some evidentiary value. *Cf. Reyes .v. INS,* 673 F.2d 1087, 1090 (9th Cir.1982).

**6.** The Board's opinion below did not consider whether Mr. Brown had established a *prima facie* case of continuous presence. Thus, we do not consider here whether petitioner's failure to include affidavits from family members and to respond to the question set forth in block six of

*Osuchukwu v. INS*, 744 F.2d 1136, 1142 (5th Cir.1984) (BIA abuses its discretion when it makes a finding "utterly without foundation in the evidence.").

■ But that is not the end of the matter. The BIA also grounded its decision on the finding that Mr. Brown had failed to submit sufficient evidence to establish a *prima facie* case of "exceptional and extremely unusual hardship." Seeking to buttress his contention that he did in fact make a *prima facie* showing of this daunting level of hardship, Mr. Brown relies heavily on the allegations of non-economic hardship set forth in his motion to reopen. In particular, the motion papers asserted that Mrs. Brown would not leave the United States if her husband were deported and that the resulting separation of the family would cause Mr. Brown's wife and child to suffer substantial emotional distress.

But these allegations, upon analysis, were just that. They were assertions of counsel, not evidence. No attempt was made to comply with the express requirement that allegations be supported by "affidavits or other evidentiary material." Not a scintilla of evidence was adduced in the motion papers or anywhere else in the record to support the averments of imminent family separation and consequent hardship.[7] In view of this evidentiary failure, the Board was not required to consider those allegations of hardship. *See Wang, supra,* 450 U.S. at 143, 101 S.Ct. at 1030; *Patel v. INS,* 741 F.2d 1134, 1137 (9th Cir.1984); *Sanchez v. INS,* 707 F.2d 1523, 1527 (D.C.Cir.1983).

■ The other allegations of hardship set forth in the motion to reopen related to the economic disruption that deportation would occasion for Mr. Brown and his family. Petitioner failed, however, to set forth an evidentiary basis for many of these assertions of economic hardship. For example, no evidence was adduced to support the allegations that Mr. Brown's deportation would prevent him from continuing his career as an accountant and leave his wife unable to afford the costs of maintaining the family home or caring for their child in the manner accustomed. Furthermore, the BIA found that to the extent there was evidence of economic hardship,[8] it was "insufficient to establish a *prima facie* case of 'exceptional and extremely unusual hardship.'" Record at 3–4. In support of that finding, the Board cited numerous authorities for the settled rule that a showing of economic hardship does not constitute "extreme hardship" under Section 244(a)(1) of the Act. *See, e.g., Wang, supra,* 450 U.S. at 144–146, 101 S.Ct. at 1031–1032; *Moore v. INS,* 715 F.2d 13, 16–17 (1st Cir. 1983); *Diaz-Salazar v. INS,* 700 F.2d 1156,

---

the suspension of deportation application pertaining to departures from the United States would warrant a determination that Mr. Brown failed to establish a *prima facie* case of continuous presence.

**7.** At oral argument, Mr. Brown's counsel represented that he believed that he would be allowed to present the necessary evidence at a hearing before the BIA. This belief was without justification in law. *See Sanchez v. INS,* 707 F.2d 1523, 1527 (D.C.Cir.1983) (citing *Agustin v. INS,* 700 F.2d 564, 566 (9th Cir.1983)). Indeed, to allow an offer of proof to satisfy the express evidentiary requirement set forth in the regulations would defeat the screening function of 3.8(a).

Our research in this arcane area of the law suggests the possibility of confusion in the instructions accompanying Form I–256A, governing applications for suspension of deportation (as opposed to motions to reopen). *See* 2 C. GORDON & H. ROSENFIELD, IMMIGRATION LAW AND PRO-

CEDURE 10–44 (1985) (reprinting Form I–256A). Those instructions set forth specific documentary requirements of proof with respect to continuous presence in the country and good moral character but fail to alert an applicant to the need to provide any documentation of hardship other than that which establishes the relationship of the applicant to those claimed to suffer hardship. Petitioner has not advanced any contention that *he* was in fact misled by instructions; and, indeed, the express language of the regulation itself is clear. But this area of law, involving procedural vehicles such as motions to reopen and motions to suspend deportation, is of such labyrinthine complexity that the most considered and clear agency instructions are warranted to avoid any applicant's being misled as to applicable evidentiary requirements.

**8.** Petitioner provided evidence that he has a well-paying post as an accountant, Record at 20, 56, which he would of course be required to relinquish were he to be deported.

1160 (7th Cir.), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). As the Board observed, relief under the "exceptional and extremely unusual hardship" standard of § 244(a)(2) is even more restrictive than the "extreme hardship" standard of § 244(a)(1), *see, e.g., Wang v. INS,* 622 F.2d 1341, 1345 n. 2 (9th Cir.1980) (*en banc* ), *rev'd on other grounds,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981), and "should be available only in the very limited category of cases in which the deportation of the alien would be unconscionable." S.Rep. No. 1137, 82d Cong., 2d Sess. 25 (1952), *quoted in Asikese v. Brownell,* 230 F.2d 34, 36 & n. 2 (D.C.Cir.1956).

For the reasons stated, we conclude that the BIA acted within its discretion and consistent with law in concluding that petitioner's purported showing of "exceptional and extremely unusual hardship" simply did not warrant the reopening of these proceedings.

*Denied.*