**Esmail HAFTLANG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 85–1306.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 12, 1986.

Decided May 9, 1986.

Robert B. Walker, Washington, D.C., for petitioner.

David J. Kline, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Asst. Atty. Gen., and Thomas W. Hussey, Asst. Director, Office of Immigration Litigation, Civil Division, Dept. of Justice, Washington D.C., were on brief, for respondent. Millicent Clarke, Atty., Dept. of Justice, Washington, D.C., entered an appearance for respondent.

Before WRIGHT, WALD, and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

We are asked in this case to review a decision of the Board of Immigration Appeals (BIA) denying petitioner Esmail Haftlang's motion to reopen his deportation proceedings to assert a claim for asylum. Petitioner argues that the Board's prior deportation order violated his right to counsel under the due process clause. Further, he argues that the Board erred in concluding that he had failed to establish a *prima facie* case of eligibility for asylum. Consequently, petitioner asks this court to remand the case to the BIA for further proceedings.

We hold that petitioner has waived whatever due process challenge he once had by failing to appeal his initial deportation order. Moreover, because petitioner failed to proffer specific allegations supporting his claim of a well-founded fear of persecution, the BIA properly concluded that petitioner

had failed to establish a *prima facie* case. Thus we affirm the Board's denial of petitioner's motion to reopen his deportation proceedings.

## I. BACKGROUND

Petitioner Esmail Haftlang, a citizen of Iran, entered this country during the Spring of 1980 on a valid student visa. He promptly enrolled in and completed a course in intensive English. Although he had planned to continue his education by studying engineering at the Northern Virginia Community College, he became ill and delayed his application to the school. When he finally submitted his application, the school informed petitioner that his visa had expired.

Petitioner thus turned to the Immigration and Naturalization Service (I&NS) to secure the necessary visa. The I&NS, however, had different plans for petitioner and commenced deportation proceedings against him. At the first deportation hearing, on October 19, 1981, petitioner denied deportability. The Immigration Judge scheduled a second hearing on that issue for November 12. On that date, however, appellant secured another continuance to obtain the assistance of counsel. At the next hearing, on December 15, 1981, the newly-retained counsel requested and received yet another continuance to prepare the case. The hearing was rescheduled for January 11, 1982.

Petitioner's counsel, however, took this opportunity to slip away from Washington on a vacation to Hawaii. Unfortunately for petitioner, counsel failed to seek another continuance, inform his client of his absence, or obtain substitute counsel to appear at the hearing. Thus, when the Immigration Judge called petitioner's case and no one answered, she entered a Final Voluntary Departure Order against him.[1]

Nearly a year and a half later petitioner again appeared before the Immigration Judge. He had obtained new counsel and sought to stay the deportation order and to reopen the proceedings to assert a claim for political asylum. In support of his motion petitioner submitted his own affidavit, a letter from Amnesty International describing conditions in Iran, and a letter from two former high-ranking Iranian military officers and one director of the Iran American Friendship Foundation. *See* Administrative Record at 103–105, 124, 126–127. The Immigration Judge denied the motion and the BIA affirmed. Finally, the Board rejected petitioner's motion to reconsider its earlier decision. In support of this motion petitioner submitted his sister's application for political asylum, which had been granted two days earlier. The Board denied the motion and petitioner sought review in this court.

## II. DISCUSSION

Petitioner appears to challenge both the Board's refusal to reopen his deportation proceedings and the deportation order itself.

### A. *The Due Process Argument*

Petitioner first argues that he was denied due process of law by the entry of the deportation order in the absence of counsel. It is unclear whether petitioner seeks to challenge the initial deportation order on this ground or to argue that the Board should have reopened his deportation proceedings because of the absence of counsel at the hearing.

To the extent that petitioner seeks review of the deportation order, we decline the invitation. Because of the regrettable failure to file an appeal from the Final Deportation Order, petitioner is barred at this late date from directly challenging that order. To the extent that petitioner seeks to invoke the absence of counsel as a ground for reversing the Board's denial of the motion to reopen, again we decline. As noted *infra*, in order to reopen deportation proceedings petitioner must establish a *prima facie* case of

---

1. Upon receipt of the Final Order, vacationing counsel's partner sought and obtained a three-day extension of the time within which to file an appeal. No appeal, however, was ever filed. As noted *infra* in text, petitioner is represented by new counsel on this appeal.

eligibility for asylum *and* convince the BIA to exercise its discretionary authority to reopen the proceedings. Although the absence of counsel might influence the Board's consideration of whether to exercise its discretionary authority, it logically cannot establish the existence of a *prima facie* case for asylum. Because the Board refused to reopen petitioner's deportation proceedings on the latter ground, consideration of the former is premature.

## B. *Motions to Reopen and the* Prima Facie *Case.*

Petitioner next argues that the Board erred in concluding that he had failed to establish a *prima facie* case of eligibility for asylum. Thus, in petitioner's view, the Board erred in denying his motion to reopen the deportation proceedings to allow him the opportunity to assert his claim for asylum.

To qualify for eligibility for asylum under the Immigration and Nationality Act, an alien must be a "refugee" within the meaning of the Act. 8 U.S.C. § 1158(a) (1982). A "refugee" is, among other things, "any person who is outside any country of such person's nationality * * * and who is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-grounded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion * * *." 8 U.S.C. § 1101(a)(42) (1982).

■ Although the I&NS regulations specifically allow an alien to assert a claim for asylum in a motion to reopen deportation proceedings, 8 C.F.R. § 208.11 (1986), the alien's burden becomes significantly heavier at this late date. Specifically, the alien must first demonstrate the existence of a *prima facie* case of eligibility for asylum. *See I&NS v. Wang,* 450 U.S. 139, 141, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1981); *Brown v. I&NS,* 775 F.2d 383, 387 (D.C.Cir.1985). Even after the alien has cleared this first hurdle, however, the I&NS retains discretionary authority to deny the motion to reopen the deportation

proceedings. *I&NS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985); *Brown v. I&NS, supra,* 775 F.2d at 387. Only after an alien has (1) established a *prima facie* case of eligibility *and* (2) persuaded the I&NS not to deny the motion on discretionary grounds can the alien succeed in reopening his deportation proceedings.

■ Establishment of a *prima facie* case, then, serves a screening function by ensuring that only those cases in which facts are alleged and supported that are legally sufficient to support a finding of eligibility for asylum will be reopened. The I & NS in reviewing such a motion acts much like a trial court acts in reviewing a motion for summary judgment. In both cases the purpose of the inquiry is to isolate cases worthy of further consideration; in neither case is the court or agency to assess the *credibility* of the evidence. Moreover, because the I&NS retains additional discretionary authority to deny the motion, the agency must be careful to articulate the ground upon which it bases its decision.

■ Thus the Board must accept as true reasonably specific facts proffered by an alien in support of a motion to reopen unless it finds those facts to be "inherently unbelievable." *See Maroufi v. I&NS,* 772 F.2d 597, 600 (9th Cir.1985); *Mattis v. I&NS,* 756 F.2d 748, 751 (9th Cir.1985); *Agustin v. I&NS,* 700 F.2d 564, 565 (9th Cir.1983). This rule serves to ensure that the alien has had "his day in court" to demonstrate the truth of the facts alleged. *See Reyes v. I&NS,* 673 F.2d 1087, 1090 (9th Cir.1982). Moreover, requiring the Board to accept an alien's proffered facts as true does not threaten the ability of the Board to weed out meritless cases. The Board may reject such motions when they are conclusory or inherently unbelievable.

In this case petitioner supported his motion to reopen the deportation proceedings with several pieces of evidence. First he submitted his own affidavit in which he alleged that his entire family had long been

associated with the Shah's regime in Iran. Administrative Record at 105. He noted that both his father and his sister had worked for the Shah and that he and his sister had left Iran for fear of persecution. *Id.* In addition, he noted that his parents face "constant surveillance and harassment * * *." *Id.* Finally, he predicted that he would be subject to persecution and possible military induction upon his return to Iran. *Id.*

Petitioner also submitted a letter from two former high-ranking Iranian military officials and a director of the Iran American Friendship Foundation. *Id.* at 124. In it the correspondents confirmed that petitioner's family was closely connected to the Shah and also noted that petitioner is the nephew of General Mahmoud Askari. Most important, the letter opined that there is "no question" that petitioner "would undoubtedly run a very high risk of prosecution, and imprisonment would be the least punishment that he would expect." *Id.* Finally, petitioner submitted a letter from Amnesty International describing the conditions in Iran generally. The letter made no specific reference to petitioner or to his family.

In the Board's view, this evidence was insufficient to establish a *prima facie* case. *Id.* at 54 (Decision of BIA on Petitioner's Motion to Reopen). The Board noted that petitioner had failed to make specific allegations of harassment of his family. Thus it rejected the evidence as "mere speculation and conclusory statements * * *." *Id.*

■ We note that the Board made no finding that petitioner's evidence was "inherently unbelievable." [2] Rather the Board rested its decision on the ground that petitioner's evidence was wholly conclusory. We hold that the Board did not abuse its discretion in finding that petitioner's evidence was conclusory and therefore insufficient to establish a *prima facie* case of eligibility for asylum.

Petitioner's affidavit failed to describe specifically the harassment suffered by his parents or to explain how he would be subject to even worse persecution based only on his relationship with his parents. Moreover, the letter authored by the ex-military officials was similarly conclusory in nature. The Board was wholly within its authority in questioning the authors' conclusion that petitioner would be subject to prosecution or imprisonment. Absent some reasonably specific factual basis for this prediction, the Board is under no obligation to accept such statements. Indeed, requiring the Board to reopen deportation proceedings based upon such wholly conclusory evidence threatens to overwhelm the Board with such motions. Recognizing the broad deference accorded the Board in evaluating motions to reopen, we decline the invitation to limit the Board's discretion.

Moreover, we note that the Ninth Circuit reached a similar result in *Shoaee v. I&-NS*, 704 F.2d 1079 (9th Cir.1983). In that case the petitioner, an Iranian citizen, alleged that his family had close ties to the Shah's government, that his father's pension had been cut off, that his brother had not been allowed to leave Iran for medical treatment, that he had worked for the U.S. defense establishment, and that he had spoken out against the current regime. *Id.* at 1084. The Board rejected the petitioner's motion to reopen and the Ninth Circuit affirmed, specifically holding that "mere assertions of possible fear" were insufficient to carry the burden of demonstrating a *prima facie* case. The facts alleged by petitioner in the case at bar are similarly conclusory in nature. Thus the Board acted reasonably in rejecting petitioner's motion to reopen. *See also Agustin v. I&-*

---

**2.** This determination must be made *by the Board* rather than this court. *See Maroufi v. I&-NS*, 772 F.2d 597, 600 (9th Cir.1985) (Board must accept as true facts proffered "unless *it finds* those facts to be 'inherently unbelievable.'" (emphasis added)); *Reyes v. I&NS*, 673 F.2d 1087, 1090 (9th Cir.1982) (distinguishing prior case in which I & NS assessed credibility of evidence on grounds that *the Board* found it to be inherently unbelievable); *Hamid v. I & NS*, 648 F.2d 635, 637 (9th Cir.1981) (approving I&NS assessment of facts when I&NS made a finding that allegations were inherently unbelievable).

*NS, supra,* 700 F.2d at 565 (mere allegations of economic and emotional hardship are insufficient to establish *prima facie* case).

We emphasize the narrowness of our holding. We hold only that in circumstances such as this the Board may reasonably conclude that a petitioner has failed to carry his burden of alleging a *prima facie* case of eligibility for asylum.

*Affirmed.*